No. 12113

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

ALLEN L. McALEAR,

                        Plaintiff and Respondent,

    -vs-

SAINT PAUL INSURANCE COMPANIES,
a Corporation,

                        Defendant and Appellant.

---

Appeal from: District Court of the Fourteenth Judicial District,
                Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Patrick F. Hooks argued, Townsend, Montana.
        Glenn F. Kenney appeared, Helena, Montana.

    For Respondent:

        Allen L. McAlear argued, Bozeman, Montana.

---

                    Submitted: January 12, 1972

                    Decided: JAN 3 1 1972

Filed: JAN 3 1 1972

*Thomas J. Kearney*
                      Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In a declaratory judgment action involving an attorney's professional liability insurance policy, the district court held the insurer liable for the cost of its insured's defense against a third-party property damage action based upon a collision caused by the insured's runaway airplane. From this final judgment, the insurer appeals.

The single controlling issue upon appeal is whether the insurer is liable for the costs of such defense incurred by its insured. The district court held the insurer liable. We reverse.

The facts in this case are uncontradicted as the case was submitted on the basis of an agreed statement of fact which included the pleadings, stipulated exhibits, and discovery proceedings. On November 14, 1969, plaintiff Allen F. McAlear, a Bozeman attorney, purchased a professional liability policy from defendant, Saint Paul Insurance Companies, containing the following insuring agreement and exclusions:

"Insuring Agreements

"Coverage A - Professional Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable (the performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee or in any similar fiduciary capacity, but only to the extent for which in the usual attorney-client relationship the Insured would be legally responsible as attorney for a fiduciary)

and the Company shall have the right and duty to defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The Company, however, shall not make settlement or compromise any claim or suit without the written consent of the Insured."

The "Exclusions" section of the policy specifically provides:

"Coverage A does not apply:

" * * *

"(3) to bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof."

During the policy period McAlear flew to Salt Lake City with a client, Robert S. Beck. Beck had contacted McAlear regarding the purchase of a trailer and it was necessary for them to go to Salt Lake City to obtain financing from a private individual. As the sellers were insolvent it was necessary to complete the transaction and get the title recorded before liens could be recorded against the seller's equity in the trailer.

Beck and McAlear had flown to Salt Lake City on March 20, 1969, in McAlear's plane for this purpose. They transacted their business on March 21 and 22. At about 6:00 a.m. on March 23, while preparing to return to Bozeman, McAlear was engaged in a preflight inspection of his plane. He manually turned over the propellor while the ignition was in the "on" position. This caused the pilotless airplane to accelerate down the ramp and crash into three other airplanes.

On May 21, 1970, an action was filed in the United States District Court in Utah by Gordon S. Burchett, the owner of one of the damaged planes. The Burchett action sought damages against McAlear for his alleged negligence and sought recovery of repair costs, depreciation and loss of use of Burchett's airplane.

McAlear's professional liability policy with his insurer, Saint Paul Insurance Companies, is the sole basis for his claim in the instant declaratory judgment action. He demanded of Saint Paul that it defend him in the Burchett action. Saint Paul denied this demand on the basis that his policy afforded no coverage and accordingly it owed him no duty to defend. McAlear then hired his own attorney to defend in the Burchett action.

Thereafter McAlear brought the instant declaratory judgment action against Saint Paul seeking a judgment holding it liable for the reasonable costs of his defense. The case was filed in the district court of Meagher County and submitted to the district court, sitting without a jury, for decision on the basis of an agreed statement of facts. The district court on July 2, 1971 entered an "Order", in effect the judgment, providin material part:

> "IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the Plaintiff recover for his cost of defense in the suit brought against him.
>
> "It appears to the Court that the policy was carelessly written, and since this is the fault of the insurance company, they should pay for their own carelessness, because certainly the duty to defend is not limited to the liability of the policy."

Following denial of insurer's motion that the court enter written findings of fact and conclusions of law, the insurer appeals.

The thrust of insurer's position in the instant case is that its duty to defend is limited to claims against the insured within the coverage of the policy. The insurer contends that where, as here, there is no primary indemnity coverage for the Burchett accident, it has no duty to defend. Insurer points out that the basic insuring agreement in the policy (Coverage A), properly construed, so limits the duty to defend and that the policy contains an express exclusion of property damage claims (Exclusion 3).

On the other hand, the gist of the insured's position is that the duty to defend is contractual and where, as here, the duty to defend is unrestricted by the terms of the policy, the duty to defend is not limited to the primary indemnity coverage of the policy. According to the insured, the duty to defend in the instant case is entirely independent of the primary indemnity coverage of the policy. Thus, the insured argues, where the Burchett complaint falls within the scope of the "duty to defend" provision in the policy, the insurer is obligated to defend without regard to the primary indemnity coverage afforded by the policy. As a corollary to this argument, the insured insists that the exclusion of property damage claims from the primary indemnity coverage afforded by the policy in no way limits the duty of the insurer to defend.

Ordinarily a liability insurer has no duty to defend an action against the insured when the claim or complaint does not fall within the coverage of the liability policy. If the insurer would have no obligation to indemnify the insured should the complainant recover, then there is no contractural obligation to afford a defense. This general rule is succinctly stated in 50 ALR2d at page 472, as follows:

> " * * * a liability insurance company has
> no duty to defend a suit brought by a third
> party against the insured where the petition
> or complaint in such suit upon its face al-
> leges a state of facts which fails to bring the
> case within the coverage of the policy. Con-
> sequently the company is not required to de-
> fend if it would not be bound to indemnify
> the insured even though the claim against him
> should prevail in that action."

To like effect see 49 ALR2d 703; 114 U. of Pa. Law Review 734, "The Insurer's Duty to Defend Under a Liability Insurance Policy" pp. 747-749, 757; 7A Appleman Ins. L. & P., § 4685, pp. 462, 471.

The allegations in the complaint against the insured determine whether there is coverage under the policy. This general rule is well stated in 44 AmJur 2d, Insurance, § 1539;

> "Upon the basis of the allegations of the
> complaint or petition, the courts have adopted
> the following tests for determining whether
> particular allegations require the insurer to
> defend the action brought against the insured:
> if the complaint in the action brought against
> the insured upon its face alleges facts which
> come within the coverage of the liability policy,
> the insurer is obligated to assume the defense
> of the action; but if the alleged facts fail
> to bring the case within the policy coverage,
> the insurer is free of such obligation, at
> least initially. Stated differently, the
> insurer is under an obligation to defend only
> if it could be held bound to indemnify the
> insured, assuming that the injured person proved

the allegations of the complaint, regardless of the actual outcome of the case. * * *"

Measuring the Burchett claim against the policy provisions here, it is clear that Burchett's action is a property damage claim seeking money damages for McAlear's alleged negligence in damaging Burchett's plane, depreciation in its value, and loss of its use. The policy expressly excludes from coverage "injury to or destruction of any tangible property, including the loss of use thereof". Under such circumstances there is no duty to defend, as has been well expressed by the Michigan Supreme Court in Duval v. Aetna Casualty & Surety Co., 304 Mich. 397, 8 N.W.2d 112, 114:

> "The insurer is not required to defend the insured against claims expressly excluded from coverage in the policy. The exception in the policy is a part of the contract between the parties. The duty of the insurance company to defend was not independent of the duty to pay damages, if any. The two provisions are not separable."

However, McAlear contends that the "duty to defend" provision of his policy is unique, thereby taking his case outside the scope of the general rule. He points out that the basic insuring agreement, Coverage A, provides in material part "the company shall have the * * * duty to defend * * * any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent". He further contends this provision constitutes an unrestricted contractual obligation on the part of the insurer to defend without regard to the primary indemnity coverage afforded by the policy. McAlear contends that because such language neither refers to nor restricts the duty to defend to damage actions within the coverage of the policy, any suit for

- 7 -

damages within the scope of the "duty to defend" provisions of the policy imposes such duty on the insurer. For emphasis, he points out that under coverage B in the policy (not purchased by the insured in the instant case) the duty to defend is restricted by the following language:

> " * * * the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless * * *".

Regarding interpretation of the terms of the policy here, the insured insists that an insurance policy differs from an ordinary contract between two persons in that there is no true negotiation and bargaining between the insurer and the insured in arriving at the terms of an insurance policy; that the terms of the policy are standardized by the insurer and offered to the insured on a "take-it-or-leave-it" basis; and that the insured really has nothing to say about the policy terms because of his lack of any real bargaining power with the insurer. The insured here reminds us that because of such circumstances existing in non-negotiated "adhesion" contracts such as insurance policies, all doubts as to the meaning of the terms in the policy must be resolved in favor of the insured and against the insurer.

We recognize this principle of interpretation of "adhesion" contracts as expressed by the California Supreme Court in Gray v. Zurich Insurance Company, 65 C.2d 263, 419 P.2d 168, 171:

> "Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning

> which the parties expected from them, they
> have also applied the doctrine of the adhesion
> contract to insurance policies, holding that
> in view of the disparate bargaining status of
> the parties we must ascertain that meaning of
> the contract which the insured would reason-
> ably expect." (Emphasis added.)

The Montana Supreme Court has previously recognized this same
test in the following language from St. Paul Fire & Marine Ins.
Co. v. Thompson, 150 Mont. 182, 187, 433 P.2d 795:

> "Again looking to the Kansas rule which we
> have adopted, we find that, 'the test is not
> what the insurer intended the words of the
> policy to mean but what a reasonable person
> in the position of an insured would understand
> them to mean.'"

Applying this test to the instant case, would a reason-
able lawyer expect that his professional liability policy obli-
gated his insurer to defend him against damage suits expressly
excluded from the primary indemnity coverage of the policy?  Or
put another way, would a reasonable lawyer understand that his
professional liability policy obligated his insurer to defend
him against all damage suits of whatever nature?  We hold that a
reasonable lawyer would no more understand that his professional
malpractice policy obligated his insurer to defend him against
damage claims arising out of an airplane accident than against
damages arising out of an assault, an automobile accident, or a
fall on the steps of his residence.

Both McAlear and the district court rely heavily upon
the holding of this Court in Thompson for the proposition that
the duty to defend is broader than the primary indemnity coverage
under an insurance policy.  There we said at p. 188,

"'"The principle that 'the duty to defend is broader than the duty to pay' is now beyond cavil." The agreement to defend is not a covenant subordinate to or dependent on the agreement to indemnify; it is distinct from, different from, independent of, and broader than the insurer's promise to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury. There is no language in the policy making the defense covenant dependent on the amount of liability for bodily injury. The defense covenant is clear, positive and unambiguous, and should be accorded its plain and ordinary meaning.' Comunale v. Traders & Gen. Ins. Co., 321 P.2d 768, 773, (Cal.App.)"

Thompson is clearly distinguishable and must be construed in the light of the facts of that case. There the insured carried an automobile liability policy with State Farm Mutual Insurance Company. In prior litigation State Farm had paid the limits of the policy on a judgment against Thompson and argued that it had no further duty to defend Thompson. We held otherwise.

The distinction is that in Thompson the claim against the insured was clearly within the primary indemnity coverage of his policy, while here Burchett's claim is clearly outside the primary indemnity coverage. In Thompson the insurer urged that it was relieved of its duty to defend because of payment of the liability limits, whereas in the instant case there can never be any obligation on the part of the insurer to pay any judgment in the Burchett action. Additionally, in Thompson, the duty to defend was contained in one portion of the policy, while the duty to pay was contained in another; here the duty to defend and the duty to pay are all included in one sentence. Thus, Thompson is

- 10 -

no authority for the proposition that an insurer's duty to defend extends to cases outside the primary indemnity coverage of the policy.

For the foregoing reasons the judgment of the district court is reversed and the cause dismissed.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 11 -