No. 83-79

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

LINDSAY DRILLING & CONTRACTING,
a Mont. corp., WESLEY LINDSAY
and TERRY LINDSAY,

Plaintiffs and Appellants,

-vs-

UNITED STATES FIDELITY & GUARANTY
CO.,

Defendant and Respondent.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon R. Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Keller, Reynolds, Drake, Sternhagen & Johnson;
P. Keith Keller argued, Helena, Montana

For Respondent:

Gough, Shanahan, Johnson & Waterman; Alan L.
Joscelyn argued, Helena, Montana

---

Submitted: December 8, 1983

Decided: January 31, 1984

Filed: JAN 31 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The District Court of the First Judicial District, Lewis and Clark County, issued a declaratory judgment holding that United States Fidelity and Guaranty Company (USF&G) has no obligation to defend Lindsay Drilling and Contracting (Lindsay) in a counterclaim action filed against Lindsay by the Seiler Partnership and Jeannie S. Mine Company. Lindsay appeals. We reverse the judgment of the District Court.

The Seiler Partnership and Jeannie S. Mine Company retained Linsday in 1979 and 1980 to drill test holes on placer claims near Boulder, Montana. The economic feasibility of mining in that area was then determined by hand washing a core sample from each test hole to determine the amount of gold present, compared to other soil components.

The claim owners failed to pay Lindsay for its drilling services, causing Lindsay to foreclose on a mechanic's lien. The partnership and mine company thereafter filed a counterclaim against Lindsay on June 29, 1981, alleging that:

> "[Lindsay's] employees, agents or by-standers whom [Lindsay] allowed to be present during core drilling and testing, fraudulently and deliberately introduced small quantities of gold into the core samples, or otherwise by means unknown . . . altered the test results so as to make it appear that the mining properties contained more minerals than in fact existed . . . As a direct and proximate result, Defendants Seiler and Jeannie suffered economic losses exceeding two million dollars.
>
> "3. That the economic losses suffered by Defendant Jeannie were a direct result of misrepresentations made by [Lindsay], and [Lindsay's] negligence in allowing one or more individuals to interfere with core drilling and testing which resulted in the alteration of the test results and data, to the economic detriment of Seiler and Jeannie."

USF&G insured Lindsay Drilling & Contracting and its full-time employees. Therefore, Lindsay tendered defense of the counterclaim to USF&G, which refused to accept on the

2

ground that the allegations of the counterclaim were not covered by its insurance policy.

On October 21, 1981, Lindsay filed a complaint, pursuant to the Uniform Declaratory Judgment Act, sections 27-8-101, et seq., MCA, to determine the rights, duties and liabilities of the parties under the insurance contract. The declaratory judgment concluding that "the damages alleged in the counterclaim do not fall within those risks contemplated and insured by [USF&G's] policy," was then issued January 25, 1983. We view the District Court's interpretation of the insurance policy as too restrictive.

The factual circumstances present essentially two issues: (1) whether the insurance policy obligates USF&G to defend Lindsay, the insured, in the counterclaim action; and (2) whether the policy issued by USF&G provides coverage for a resulting judgment in the counterclaim action against Lindsay.

The second issue depends upon whether operations were being performed by or on behalf of the insured at the time of the injury as is hereafter discussed. This must await determination by the jury. Therefore, we confine our holding to the question of "obligation to defend."

A duty to defend exists if the counterclaim sets forth facts which represent a risk covered by the terms of the insurance policy. Atcheson v. Safeco Insurance Co. (1974), 165 Mont. 239, 245-46, 527 P.2d 549, 552. The contract's major coverage provision and its pertinent definitions state:

> "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the Company shall have the right

3

and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage . . ..

\* \* \* \* \* \* \* \* \* \*

"'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

"'property damage' means:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

"(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (emphasis supplied)

The counterclaim alleges that Lindsay, either intentionally or negligently, permitted someone to tamper with the core samples, "or otherwise by means unknown . . ." altered the test results, and that the claim owners thereafter incurred losses in their investments as a result of relying on the altered core samples. The policy covers this set of alleged facts.

A covered occurrence, as defined in the policy, is one whose consequences were neither expected nor intended by the insured. In Northwestern National Casualty Co. v. Phalen (1979), 182 Mont. 448, 597 P.2d 720, we held that an insurance policy with the same definition of "occurrence" covered an intentional act whose consequences were neither expected nor intended. Here, the counterclaim alleges in part that Lindsay negligently allowed bystanders to tamper with the core samples. This scenario does not include intended or expected consequences. Therefore the counterclaim sets forth a covered "occurrence" as defined in the policy, if bodily injury or property damage resulted.

4

The policy requires physical injury to tangible property. Whether property is tangible or intangible depends upon its nature and characteristics. State Board of Equalization v. Fall (1948), 121 Mont. 280, 192 P.2d 532. The core samples are tangible property because they are perceptible and material. H.D. & J.K. Crosswell, Inc. v. Jones (D.C.S.C.) (1931), 52 F.2d 880, 883.

The District Court felt that the only loss was data or information and as such was intangible. However, there was the direct loss of the core sample itself which certainly had some value. The drilling expense and other inherent production costs establish an intrinsic value in the tangible core sample. Thus there was tangible loss.

The term injury does not necessarily contemplate harm. Restatement of Torts 2d §7, Comment a. Rather, it can be a physical change or alteration which is either beneficial, detrimental or of no consequence. Restatement of Torts 2d, §7, Comment b.

The facts set forth in the counterclaim allege that the core samples have been physically injured. They were physically and materially altered when they were salted with gold. That alteration resulted in a detriment to the partnership and mining company. The facts set forth in the counterclaim allege "property damage" as defined in the insurance policy and the occurrence is covered by the policy.

USF&G asserts that two of the policy's exclusions apply and relieve the company from its defense obligation. We disagree. The first exclusion states:

"This insurance does not apply:

          *      *      *

"(n) to property damage to the Named Insured's products arising out of such products or any part of such products;"

5

The alleged damage to the core samples was clearly not caused by the core samples themselves. Rather, the counterclaim alleges that the damage was caused by either intentional or negligent acts of Lindsay. Such acts are not covered by exclusion (n).

The second claimed exclusion is a broad form property damage coverage provision which replaces the typical care, custody and control coverage found in insurance policies. It states in relevant part:

"This insurance does not apply:

*     *     *

"(w) to property damage . . .

"(2)(d) to that particular part of any property, not on premises owned by or rented to the Insured,

"(i) upon which operations are being performed by or on behalf of the Insured at the time of the property damage arising out of such operations, or . . ."

We interpret this language to exclude from coverage, damage caused by Lindsay or employees during operations. However, if the samples were salted by third parties who had access to samples only because of Lindsay's negligence, then the exclusion would not apply. Since the counterclaim has alternative allegations there is still an obligation to defend though there may not be coverage if the jury finds Lindsay or Lindsay's employees contaminated the samples during operations.

Finally, we find USF&G liable to Lindsay for its attorneys fees and expenses incurred in the instant case. It was USF&G's wrongful refusal to defend Lindsay which led to this action. Therefore, the insurer is liable for reasonable attorney fees, expenses and court costs occasioned thereby. Home Insurance Co. v. Pinski Brothers (1972), 160 Mont. 219, 500 P.2d 945.

6

We vacate the declaratory judgment issued against Lindsay and remand this case to the District Court of the First Judicial District for entry of a declaratory judgment ordering USF&G to defend Lindsay in the suit brought against it by the Seiler Partnership and Jeannie S. Mine Company. The District Court shall also determine the reasonable attorney fees, expenses and court costs of Lindsay in bringing this action and order USF&G to pay the same.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justices John C. Sheehy, L. C. Gulbrandson and Fred J. Weber dissent and will file written dissents later.