**AETNA CASUALTY AND SURETY COMPANY, a corporation, Plaintiff,**

v.

**FIRST SECURITY BANK OF BOZE-MAN, a Montana banking corporation; and Steven E. Wheeler, Defendants.**

No. CV–86–32–BU–WDM.

United States District Court,
D. Montana,
Butte Division.

April 13, 1987.
On Motion for Reconsideration
June 17, 1987.

Douglas A. Buxbaum of the law firm of Poore, Roth and Robinson, Butte, Mont., for plaintiff.

Lyman H. Bennett, III of the law firm of Morrow, Sedivy & Bennett, Bozeman, Mont., for defendants.

## MEMORANDUM and ORDER

WILLIAM D. MURRAY, Senior District Judge.

This is a declaratory judgment action brought by Aetna Casualty and Surety Company (Aetna), a corporation engaged in the business of insurance. Aetna maintains its principal place of business in Connecticut.

Defendant First Security Bank of Bozeman (bank) is a Montana corporation. Defendant Steven E. Wheeler (Wheeler), an employee of the defendant bank, is a Montana resident and citizen.

Jurisdiction vests in this court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §§ 2201 and 2202.

This case is before the court on Aetna's motion for summary judgment. Having been fully briefed,[1] the motion is ripe for disposition.

## BACKGROUND

The bank carries a liability insurance policy, issued by Aetna, which insures it and its officers and employees under certain circumstances. In the instant action, Aet-

na seeks a declaration that the liability insurance policy issued to the bank does not provide coverage for the damages sought against the bank and Wheeler by a former bank employee, Claudia Ervin, in a separate suit pending in state district court.

Ervin's suit arises out of the bank's termination of her employment with it. Ervin began working at the bank in December 1979. After four years, Ervin was promoted to the position of teller. She worked in that capacity until February 4, 1985, when Wheeler discharged her.

In the underlying state court tort action, Ervin seeks to recover damages for lost wages, diminished earning capacity, harm to her reputation and emotional distress. She also seeks punitive damages.

Aetna moves for summary judgment herein on the grounds that the damages and injuries alleged by Ervin do not fall within the policy definitions of "bodily injury," "property damage" or "occurrence." Aetna argues, therefore, that the policy in question does not provide coverage in this instance.

The parties raise no factual dispute as to the content of Ervin's pleadings in the underlying action or the insurance policy issued by Aetna to the bank. Accordingly, the court is confronted with a purely legal issue: proper interpretation of the relevant policy provisions.

In diversity actions such as the instant case, state law applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner*, 606 F.2d 864 (9th Cir.1979). Montana law controls the substantive rights and obligations of the parties to this action. Where it appears that the highest court of Montana has not squarely addressed a particular question, this court must forecast what the Montana Supreme Court would do were it confronted with the same question. *Meredith v. Winter Haven*, 320 U.S. 228, 64

---

1. By order of March 12, 1987, the court determined that oral argument was not necessary.

Fed.R.Civ.P. 78 and Local Rule 220–4.

S.Ct. 7, 88 L.Ed. 9 (1943); *Commercial Union Insurance Co. v. Ford Motor Co.,* 640 F.2d 210 (9th Cir.1981).

### DISCUSSION

Under Montana law, the allegations in the complaint against the insured determine whether there is coverage under the policy. *McAlear v. Saint Paul Insurance Co.,* 158 Mont. 452, 456, 493 P.2d 331, 334 (1972). Ordinarily, a liability insurer has no duty to defend an action against its insured when the claim or complaint clearly falls outside the scope of the policy's coverage. *Id.* Where the claim against the insured sets forth facts representing a risk covered by the terms of the policy, the insurer's duty to defend arises. *Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co.,* — Mont. —, 676 P.2d 203, 205 (1984).

The liability insurance policy issued by Aetna to the bank provides coverage for "all sums which the insured shall become legally obligated to pay as damages because of *bodily injury* or *property damage* ... caused by an *occurrence.*" (Emphasis added.) Upon review of the complaint filed against the bank, the court finds that Ervin states claims for breach of the implied covenant of good faith and fair dealing attendant contracts of employment and for wrongful termination. She seeks punitive damages and damages for lost wages, diminished earning capacity, harm to her reputation and emotional distress. In ruling on Aetna's motion for summary judgment, the court must determine whether Ervin alleges "bodily injury" or "property damage" caused by an "occurrence," within the meaning of the liability policy issued by Aetna to the bank.

### 1. *Bodily Injury.*

■ The policy defines "bodily injury" as "bodily injury, sickness or disease." Aetna contends that the term "bodily injury" requires that the underlying action against its insured include some allegation of physical injury, as opposed to emotional injury. The bank counters by urging the court to find that the phrase "bodily injury" includes emotional distress. Neither party has been able to identify any Montana authority on point.

While the Montana courts have not construed the term "bodily injury" as it is used in comprehensive general liability insurance policies, the courts that have interpreted such language have determined that it limits coverage to physical injury to the body. *See, e.g., American and Foreign Insurance Co. v. Church Schools, Diocese of Virginia,* 645 F.Supp. 628, 632–33 (E.D. Va.1986) (applying Virginia law to hold that "bodily injury" coverage does not extend to purely nonphysical or emotional harm); *St. Paul Fire and Marine Insurance Co. v. Campbell County School District No. 1,* 612 F.Supp. 285, 287 (D.Wyo.1985) (applying Wyoming law in holding that allegations of emotional suffering do not constitute "bodily injury"); and *Rolette County v. Western Casualty & Surety Co.,* 452 F.Supp. 125, 129–30 (D.N.D.1978) (applying North Dakota law to hold that "bodily injury," defined in the policy in question as including "sickness and disease," did not extend coverage to damages for embarrassment, humiliation and emotional distress).

In tort actions alleging mental suffering, the Montana Supreme Court has distinguished mental and emotional harm from physical harm. *See Johnson v. SuperSave Markets, Inc.,* — Mont. —, 686 P.2d 209, 212 (1984) (allowing recovery for mental distress absent a showing of physical injury). In light of the Montana court's recognition that "there is a difference between (physical) injury and (mental) distress," *Johnson,* 686 P.2d at 212, it is likely the Montana Supreme Court would follow the lead of the above-cited decisions and hold that the term "bodily injury," as used in the liability insurance policy at issue, limits coverage to *physical* injury, sickness or disease. The court concludes, therefore, that Ervin's allegations of emotional distress do not fall within the definition of "bodily injury" in the policy issued by Aetna to the bank. As no "bodily injury" was alleged in Ervin's complaint against the

bank, coverage cannot be premised upon the "bodily injury" provision of the policy.

The bank's reliance on the decision in *County of Chemung v. Hartford Casualty Insurance Co.*, 130 Misc.2d 648, 496 N.Y. S.2d 933 (1985), is misplaced. In *Chemung*, the court held that a child's pain and suffering as a result of being physically abused over a period of three months constituted "bodily injury" within the meaning of the applicable insurance policy. The child victim in *Chemung* had sustained physical injuries. The *Chemung* court expressly refused to decide the issue of whether "bodily injury" excluded injuries of a non-physical nature. 496 N.Y.S.2d at 935.

## 2. *Property Damage.*

The court turns to the question of whether Ervin's complaint alleges any "property damage" within the meaning of the liability insurance policy. The policy defines "property damage" as follows:

"(1) [P]hysical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy."

In the underlying action against the bank, Ervin's alleged damages include lost wages, diminished earning capacity and loss of good reputation.[2]

The Montana Supreme Court has considered the "property damage" policy language at issue herein on prior occasions. In *Lindsay Drilling, supra*, the Montana court held that such language "requires physical injury to tangible property." 676 P.2d at 205. Determination of whether property is tangible or intangible depends upon the particular nature and characteristics of the type of property in question. *Id., citing, State Board of Equalization v. Fall*, 121 Mont. 280, 192 P.2d 532 (1948).

In *Lindsay*, for example, the court held that core samples from test holes drilled on placer mining claims were tangible, and therefore within the liability policy definition of "property damage," because such core samples were "perceptible and material." 676 P.2d at 206.

The Montana Supreme Court has not ruled on whether lost wages, diminished earning capacity or damage to reputation constitute "tangible property." In the absence of such authority, the bank urges the court to rule that lost wages and diminished earning capacity represent a loss of money, that money is tangible personal property, and therefore that Ervin's suit against the bank is for loss of tangible personal property. The bank relies on *Aetna Casualty and Surety Co. v. General Time Corp.*, 704 F.2d 80 (2d Cir.1983), to support its argument. The bank's argument, however, is without merit. While the court in *General Time* held that lost profits (and other consequential or intangible damages) fall within the terms of the standard comprehensive liability policy "property damage" provision, the court further held that there can be no coverage for lost profits unless there has been actual physical damage to property. 704 F.2d at 83. This court notes that where other courts have found coverage of consequential damages, including loss of profits, there has been a direct physical injury to tangible property, followed by the consequential damages. *See, e.g., Safeco Insurance Co. v. Munroe*, 165 Mont. 185, 527 P.2d 64, 68–69 (1974). In *Munroe*, the Montana court found coverage for intangible lost profits, but only because such consequential damage followed direct injury to tangible property, a wheat crop.

■ In the instant case, the Montana decisions in *Lindsay* and *Munroe* dictate a finding that Ervin's allegations of loss of wages and diminished earning capacity constitute intangible property. Wages to be received in the event of continued employment and an employee's earning capacity

**2.** Ervin's allegations of emotional distress obviously do not fall within the definition of "property damage" and will not be addressed.

constitute expectations, not entitlements. The suit against the bank does not contain any allegations of an injury to tangible property that produced the consequential damages of lost wages and reduced earning capacity. Under Montana law, the "property damage" provision of the bank's liability policy does not provide coverage for Ervin's allegations of lost wages and diminished earning capacity. *See also Travelers Indemnity Co. v. State of Arizona,* 140 Ariz. 194 680 P.2d 1255 (1984).

■ Similarly, Ervin's allegation that the bank damaged her reputation in discharging her concerns an intangible. Under *Lindsay,* the "property damage" provision of the bank's liability policy does not provide coverage for Ervin's claim concerning damage to her reputation.

### 3. *Occurrence.*

Having found no allegations of "bodily injury" or "property damage" subject to coverage under the bank's policy, the court need not rule on whether the event causing Ervin's alleged emotional distress (her discharge by Wheeler) constitutes an "occurrence" as defined by the policy.

### CONCLUSION

Summary judgment is appropriate only when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). As stated above, the parties do not dispute the literal content of the liability policy at issue or of Ervin's complaint against the bank (the policyholder). No issues of material fact exist in the instant case. As a matter of substantive Montana law, the court concludes that the policy in question does not provide coverage for Ervin's allegations against the bank (and its employee Wheeler) because Ervin does not allege any "bodily injury" or "property damage" within the meaning of the policy.

### ORDER

For the above-stated reasons,

IT IS ORDERED that plaintiff's motionf or summary judgment is GRANTED. Judgment shall be entered accordingly.

#### On Motion for Reconsideration

■ Plaintiff Aetna Casualty and Surety Company sought a declaratory judgment that no coverage exists under a liability insurance policy issued by Aetna to defendant First Security Bank of Bozeman for claims asserted against First Security by a former bank employee. By order of April 13, 1987, the court granted summary judgment in favor of Aetna.

This case is before the court on defendants' motion for reconsideration of the April 13 order. Defendants ask the court to set aside the judgment entered in favor of Aetna on the ground that newly discovered evidence—an additional endorsement to the liability policy at issue—requires such relief. Fed.R.Civ.P. 60(b)(2). Aetna concedes that the additional endorsement identified by defendants, the "Broad Form Comprehensive General Liability Endorsement," was not previously brought to the court's attention. Aetna contends, however, that this additional endorsement does not provide coverage for the claims brought against its insured by the former employee.

The pending motion for reconsideration has been briefed fully. Oral argument is not necessary. Fed.R.Civ.P. 78 and Local Rule 220–4. The underlying facts are adequately set forth on page two of the court's April 13 memorandum and order.

The newly discovered evidence relied upon by defendants is an endorsement to the liability insurance policy issued by Aetna to First Security. At all relevant times, the endorsement was in effect and formed a part of the insurance contract. Neither plaintiff's counsel nor defense counsel was aware of the existence of the "Broad Form Comprehensive General Liability Endorsement" during the original briefing on Aetna's motion for summary judgment.

The insuring clause of this additional endorsement provides:

"II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE.

(1) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *personal injury* or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent." (Emphasis added.)

The endorsement defines the term "personal injury," in relevant part, as follows:

" 'Personal injury' means injury arising out of one or more of the following offenses committed during the policy period:

"...

"(3) a publication or utterance

"(a) *of a libel or slander or other deformatory or disparaging material ....*" (Emphasis added.)

Relying on the above-quoted language of the additional endorsement, defendants argue that the claims asserted against them by the former bank employee represent a risk covered by the liability policy issued by Aetna.

As stated in the April 13 opinion and order, summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Since this is a diversity action, state substantive law applies. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner,* 606 F.2d 864 (9th Cir.1979). Montana law, therefore, controls the substantive rights and obligations of the parties herein.

Under Montana law, the allegations of the complaint against the insured determine whether there is coverage under the insurance policy. *McAlear v. Saint Paul Insurance Co.,* 158 Mont. 452, 456, 493 P.2d 331, 334 (1972). A liability insurer has no duty to defend an action against its insured when the claim against the insured clearly falls outside the scope of the policy's coverage. *Id.* Where the claim against the insured sets forth facts representing a risk covered by the terms of the insurance contract, the insurer's duty to defend arises. *Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co.,* — Mont. —, 676 P.2d 203, 205 (1984).

In the underlying state court action, the former bank employee, Claudia Ervin, alleges causes of action against First Security for (1) breach of the implied covenant of good faith and fair dealing attendant contracts of employment and (2) wrongful termination of employment. Ervin seeks damages for lost wages, diminished earning capacity, harm to her reputation and emotional distress.

Aetna contends that the complaint against its insured does not allege any claim for libel slander, defamation or disparagement, and, therefore, that summary judgment is still appropriate under the circumstances of this case. Defendants counter plaintiff's argument by reference to that portion of Ervin's complaint in which the former bank employee alleges that Steven Wheeler told Ervin she was fired on February 4, 1985. Defendants insist that an utterance of the kind made by Wheeler to Ervin could constitute defamatory or disparaging material. Defendants argue, therefore, that the language of the additional endorsement is ambiguous. Relying on the well settled rule that ambiguity in contracts of insurance are resolved in favor of the insured parties, defendants argue that summary judgment no longer is appropriate in this case.

Since the Montana courts have not squarely addressed the question before this court, I must forecast what the Montana Supreme Court would do were it confronted with the same issue. *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Commercial Union Insurance Co. v. Ford Motor Co.,* 640 F.2d 210 (9th Cir.1981).

As defined by the newly discovered policy endorsement, "personal injury" includes

publication or utterance of libelous, slanderous or other defamatory material. In *American and Foreign Insurance Co. v. Church Schools, Diocese of Virginia,* 645 F.Supp. 628 (E.D.Va.1986), the court, construing identical policy language, held that the "personal injury" coverage applied only to claims actually arising out of the enumerated torts. In light of the Montana case authority cited in its April 13 memorandum, the court believes that the Montana Supreme Court would adopt an approach similar to that taken in the *Church Schools* case.

In the underlying action against First Security, Ervin's claims are for injuries arising out of the torts of bad faith and wrongful termination, not out of the defamation torts set forth in the "Broad Form Comprehensive General Liability Endorsement." For example, Ervin makes no allegation that Wheeler's statements were false, an essential element of the defamation torts. *See,* e.g., *Griffin v. Opinion Publishing Co.,* 114 Mont. 502, 507, 138 P.2d 580 (1943). Ervin's complaint also alleges that Wheeler made the utterance in question to Ervin herself. It is well settled that communication or publication to a third person is an essential ingredient of actionable defamation. *See,* e.g., *Griffin,* 114 Mont. at 507, 138 P.2d 580, *quoting,* Restatement of the Law of Torts, Chap. 24 § 558, p. 139. *See also Pinkney v. District of Columbia,* 439 F.Supp. 519, 527 (D.D.C.1977).

As stated above, coverage under the policy issued by Aetna to First Security must be determined based on the claims brought by Ervin against First Security. In the instant case, Ervin's claims are for wrongful termination and bad faith. Ervin's complaint in the underlying state court action does not allege any cause of action for defamation. The "personal injury" endorsement that underlies defendant's motion for reconsideration applies only to claims against the insured actually arising out of the enumerated defamation torts.

For the reasons stated above, summary judgment in favor of Aetna is appropriate. The language of the policy at issue and of

Ervin's complaint against First Security (the "facts" of this case) are not in dispute. As a matter of law, no coverage exists under the policy at issue for the claims asserted against the bank by Ervin.

IT IS ORDERED that defendants' motion for reconsideration of the court's order of April 13, 1987, is DENIED.