**MUTUAL SERVICE CASUALTY INSURANCE COMPANY,**
Plaintiff,

v.

**CO–OP SUPPLY, INC. OF DILLON, MONTANA, a corporation,**
Defendant.

**No. CV–87–024–BU–PGH.**

United States District Court,
D. Montana,
Butte Division.

Nov. 9, 1988.

Christopher L. Manos, Moore Rice O'Connell & Refling, Bozeman, Mont., for plaintiff.

James M. Kommers, Landoe Brown Planalp Kommers & Johnstone, P.C., Bozeman, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Plaintiff Mutual Service Casualty Insurance Company ("MSI") instituted the

above-entitled action seeking a declaration regarding the scope of coverage under an insurance policy. This matter is presently before the court on the parties' cross-motions for summary judgment. After careful consideration, the court is prepared to rule.

## FACTUAL BACKGROUND

The facts essential to resolution of this coverage controversy are not in dispute. On March 6, 1987, Marlene Doig instituted an action in state district court against the defendant herein, Co-op Supply, Inc. of Dillon, Montana ("Co-op Supply"), alleging wrongful termination, violation of the covenant of good faith and fair dealing, negligence, intentional negligent infliction of emotional distress, violation of personnel policies, termination not for good cause and violation of public policy. Thereafter, MSI accepted defense of the state court action, under a reservation of rights, pursuant to a comprehensive liability policy and an umbrella policy issued to Co-op Supply.

On June 5, 1987, MSI instituted the present action, pursuant to 28 U.S.C. §§ 2201–2202, seeking a declaratory judgment as to whether it must defend or provide liability coverage for Co-op Supply in the state court action. Jurisdiction vests with this court pursuant to 28 U.S.C. § 1332. Having considered the parties' briefs filed in support of their respective positions, the court is prepared to rule.

## DISCUSSION

In diversity actions, the substantive rights and obligations of the parties are governed by the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner,* 606 F.2d 864 (9th Cir.1979). Construction of insurance contracts in Montana is governed by the general law of contract interpretation contained in Title 28, Chapter 3, Montana Code Annotated, and the case law which has developed thereunder in the context of insurance. Where the language of an insurance policy admits of only one meaning, there is no basis for interpretation of the policy coverage under the guise of ambiguity. *Transamerica Insurance Group v. Osborn,* 627 F.Supp. 1405, 1408 (D.Mont.1986); *citing, Universal Underwriters Insurance Company v. State Farm Mutual Auto Insurance Company,* 166 Mont. 128, 531 P.2d 668 (1975).[1]

### A. General Liability Policy

Under the general liability policy at issue, Co-op Supply was covered for "all sums which the insured [Co-op Supply] shall become legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage. . . ." (emphasis added.)

MSI contends the claims of Marlene Doig, as framed by the complaint filed in the underlying action, do not constitute "bodily injury", "property damage" or "personal injury" caused by an "occurrence" as defined by the subject policy. Upon a careful review of the policy, briefs and supporting documents, this court is compelled to disagree.

Under Montana law, the allegations in the complaint against the insured determine whether there is coverage under the policy. *Aetna Casualty and Surety Company v. First Security Bank of Bozeman,* 662 F.Supp. 1126, 1128 (D.Mont.1987), *citing, McAlear v. St. Paul Insurance Companies,* 158 Mont. 452, 456, 493 P.2d 331, 334 (1972). Furthermore, Montana law provides an insurer has a duty to defend if the complaint alleges facts, which if proven, would result in coverage. *Stillwater*

---

1. Under Montana law, the interpretation of the contract's language and whether an ambiguity exists is a question to be determined in the first instance by the court. *United States Fidelity & Guaranty Company v. Newman,* 656 F.2d 457, 459 (9th Cir.1981); *citing, McNussen v. Graybeal,* 146 Mont. 173, 186, 405 P.2d 447, 454 (1965). Furthermore, "[a]mbiguity does not exist just because a claimant says so. It can only exist where the wording or phraseology of a contract is reasonably subject to two different interpretations." *Holmstrom v. Mutual Benefit Health and Accident Association,* 139 Mont. 426, 428–29, 364 P.2d 1065, 1066 (1961).

*Condominium v. American Home Assurance Co.,* 508 F.Supp. 1075, 1077 (D.Mont. 1981), *citing, Atcheson v. Safeco Ins. Co.,* 165 Mont. 239, 527 P.2d 549, 552 (1974).

The complaint in the underlying action alleges:

As a direct result of defendant Co-op Supply's conduct and actions towards the plaintiff [Marlene Doig], the plaintiff suffered bodily injury and great humiliation, pain, and mental and emotional distress, suffering and anguish as a result of her treatment.

### 1. Bodily Injury

■ The subject policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at anytime resulting therefrom." In this court's opinion, coverage under the "bodily injury" portion of the subject policy is limited to *"physical* injury, sickness or disease" and, therefore, Doig's claims in the underlying state action alleging great humiliation, pain, and mental and emotional distress, do not trigger a duty to defend on MSI's part under the "bodily injury" portion of the subject policy. *See, Aetna Casualty, supra,* 662 F.Supp. at 1128, *citing, Johnson v. Supersave Markets, Inc.,* 211 Mont. 465, 686 P.2d 209, 212 (1984) (Montana Supreme Court distinguished mental and emotional harm from physical harm).

■ However, Doig's complaint also specifically alleges she suffered "bodily injury" as a result of Co-op Supply's actions in discharging her.[2] Consequently, MSI has a duty to defend since the complaint alleges facts, which if proven, would result in coverage. *See, Stillwater Condominium, supra,* 508 F.Supp. at 1077.

Furthermore, the subject policy provides MSI has the "duty to defend any suit against the insured [Co-op Supply] seeking damages on account of such bodily injury ... even if any of the allegations of the suit are groundless, false or fraudulent...." Judge Learned Hand, in *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2nd Cir.1949), stated,

... it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered'.

Accordingly, the question presented to the insurer in every coverage dispute is whether the injured party's complaint states facts which bring the case within the particular policy's coverage, and not whether the injured party can prove an action against the insured for damages. 1A, LONG, THE LAW OF LIABILITY INSURANCE, § 5.02, p. 5–35 (1987). Granted, MSI has no way of knowing at this point the veracity of Marlene Doig's claims of bodily injury. Despite the uncertainty as to whether Doig's allegation of bodily injury will ultimately provide a basis for recovery should she prevail in the underlying action, they are nonetheless sufficient to trigger MSI's duty to defend.

This court cannot say, with certainty, that Doig's allegation of bodily injury clearly falls outside the scope of the subject policy. The emotional trauma allegedly suffered by Doig as a result of her discharge may well manifest itself in some type of physical injury. The resultant effect of such a manifestation would, in this court's opinion, give rise to coverage under the "bodily injury" portion of the subject policy. Whether Doig sustained physical injury presents an issue of fact to be resolved upon trial, because, at this juncture, all doubts are to be resolved in favor of the insured. Accordingly, the court concludes Doig's complaint alleges the existence of a bodily injury sufficient to trigger the duty to defend on the part of MSI.

---

**2.** Doig's allegations distinguish the present action from the *Aetna Casualty* decision relied upon by plaintiff MSI. In *Aetna Casualty, supra,* the plaintiff in the underlying action simply alleged emotional distress and, therefore, the court concluded that absent any allegation of "bodily injury" in the underlying action, coverage could not be premised upon the "bodily injury" portion of the subject policy. 662 F.Supp. at 1128–29.

## 2. Occurrence

■ MSI next asserts the circumstances surrounding the termination of Doig's employment with Co-op Supply do not constitute an "occurrence" within the meaning of the policy. The subject policy defines "occurrence" as:

> An accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured....

Specifically, MSI maintains there was nothing "accidental" regarding Doig's alleged termination and, therefore, there was no "occurrence". On the other hand, Co-op Supply contends that under the clear wording of the subject policy and the pleadings in the underlying action, coupled with the decision in *United Pacific Insurance v. First Interstate Bancsystems*, 664 F.Supp. 1390 (D.Mont.1987), *modified in part*, 690 F.Supp. 917 (D.Mont.1988), the "occurrence" requirement has been satisfied.

Contrary to the contention of Co-op Supply, the *United Pacific* decision is not dispositive of the issue presented. In *United Pacific, supra,* the subject policy defined "occurrence" as:

> An accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period.

Consequently, *United Pacific* is distinguishable from the instant action in that the policy at issue herein defines "occurrence" solely in terms of an "accident".

The Montana Supreme Court's decision in *Northwestern National Casualty Co. v. Phalen,* 182 Mont. 448, 597 P.2d 720, 724 (1979), does, however, provide guidance to resolution of the issue presented. In *Phalen,* the court held that the term "occurrence", in the context of an insurance policy's insuring clause, should be construed more broadly than the term "accident".

Accordingly, the court construed the term "occurrence", as utilized in the subject policy, to include the insured's intentional acts, except those in which the resulting injury was either expected or intended from the insured's standpoint.[3] *See, contra, Hartford Fire Insurance Co. v. Karavan Enterprises, Inc.,* 659 F.Supp. 1075 (N.D.Cal. 1986) (neither the intentional underlying termination nor any unintended consequences of the termination constitute an "occurrence" or harm caused by an "occurrence"); *St. Paul Mercury Insurance Co. v. Ralee Engineering Co.,* 804 F.2d 520 (9th Cir.1986) (insurer not obligated to defend its insured in an action for intentional wrongful termination of employment, where the policy extended coverage only for claims "resulting from an accidental event"). The court's holding in *Phalen* is, of course, consistent with the established principle of construction which recognizes that exclusions and words of limitation must be strictly construed against the insurer, and the court must adopt a meaning which favors insurance coverage. *U.S.F. & G. v. Rae Volunteer Fire Company,* 212 Mont. 450, 688 P.2d 1246 (1984).

In the present action, the court does not consider the terms of the "occurrence" provision to be ambiguous. Rather, construing the definition of "occurrence" broadly, the court concludes that unintended bodily injury falls within the purview of the definition regardless of the fact that the operative conduct, *i.e.,* Co-op Supply's actions in terminating Doig, was intentional.

## 3. Property Damage

■ The subject policy defines "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of

---

**3.** The policy at issue extended personal liability coverage for damages caused by an "occurrence", with occurrence defined as "an accident resulting in bodily injury or property damage, excluding only bodily injury or property damage, which is either expected or intended from the standpoint of the insured."

use is caused by an occurrence during the policy period.

In the underlying action, Doig's complaint alleges loss of "past and future salary, loss of health benefits, and other benefits of employment," as a direct result of the alleged wrongful discharge. In this court's opinion, Doig's alleged damages do not involve tangible property and, therefore, any sums Co-op Supply might become obligated to pay in the underlying action would not be a result of "property damage" as defined in the subject policy.

> Understood in its plain and ordinary sense, 'tangible property' means 'property (as real estate) having physical substance apparent to the senses' (Webster's Third New International Dictionary (1968), p. 2337). To construe the explicit words 'tangible property' to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies to fasten on the insurers a liability they have not assumed.

*Giddings v. Industrial Indemnity Company,* 112 Cal.App.3d 213, 169 Cal.Rptr. 278, 280–81 (4th Dist.1980).

### B. *Umbrella Policy*

▌ In addition to the comprehensive liability insurance policy, MSI issued an excess-umbrella policy to Co-op Supply which provided coverage for "such ultimate net loss in excess of the insured's primary limit as the insured sustains by reason of liability, imposed upon the insured by law or assumed by the insured under contract, for damages because of personal injury or property damage to which this policy applies, caused by each occurrence happening anywhere in the world."

Co-op Supply contends Doig's assertion of claims for "physical injury and pain" triggered a duty to defend under the "personal injury" portion of the umbrella policy. The policy defines "personal injury" as follows:

> ... bodily injury, including death at any time resulting therefrom, mental injury, mental anguish, shock, sickness, disease, or disability; injury arising out of false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, racial or religious discrimination, humiliation, libel, slander, defamation of character, or invasion of rights of privacy, which occurs during the policy period. The term "personal injury" shall also include, when committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast during the policy period, and arising out of the Named Insured's advertising activities, injury arising out of: (1) infringement of copyright or of title or of slogan, and (2) piracy or unfair competition or idea misappropriation under an implied contract.

The umbrella policy also excludes coverage as follows:

> ... this policy shall not apply to any liability with respect to claims arising out of any of the following offenses:
>
> . . . . .
>
> D. Mental injury, mental anguish, shock, racial or religious discrimination, humiliation.

As stated previously, under Montana law, the allegations against an insured determine whether there is coverage under an insurance policy. *Aetna Casualty and Surety Company v. First Security Bank of Bozeman, supra,* 662 F.Supp. at 1128. "Ordinarily, a liability insurer has no duty to defend an action against its insured when the claim or complaint clearly falls outside the scope of the policy's coverage. *Id.* Where the claim against the insured sets forth facts representing a risk covered by the terms of the policy, the insurer's duty to defend arises. *Lindsay Drilling & Contracting v. United States Fidelity & Guaranty Co.,* 208 Mont. 91, 676 P.2d 203, 205 (1984)."

In the instant action, the court is compelled to conclude Doig's allegations fall within the scope of coverage under the "personal injury" portion of the umbrella policy and, therefore, create a duty to defend on the part of MSI. Although the exclusion set forth above effectively precludes any coverage with respect to alleged

damages for mental injury, anguish, shock or humiliation, the policy's definition of "personal injury" includes "bodily injury," which the court has already determined creates a duty to defend.

CONCLUSION

Accordingly, for the reasons set forth herein, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED.