No. 88-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DALY DITCHES IRRIGATION DISTRICT,
a public corporation,

        Plaintiff and Appellant,

   -vs-

NATIONAL SURETY CORPORATION, one of
Fireman's Fund Insurance Companies,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sam Haddon; Boone, Karlberg & Haddon; Missoula,
Montana

    For Respondent:

        Gregory G. Murphy; Moulton, Bellingham, Longo & Mather,
Billings, Montana

---

Submitted on Briefs:  Sept. 29, 1988

Decided:  November 29, 1988

FILED
'88 NOV 29 AM 10 09
CLERK
MONTANA SUPREME COURT

Filed

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Fourth Judicial District, in and for the County of Ravalli, involves an insurer's refusal to defend its insured. The appellant, Daly Ditches Irrigation District (Daly), appeals the decision of the District Court that the insurance policy provided by respondent, National Surety Corporation (Surety), carried no coverage for a claim made against Daly. We affirm.

The relevant facts are as follows: Daly's former employee sued Daly for breach of the covenant of good faith and fair dealing, and for discharge from employment in violation of the public policy of the State of Montana. The employee alleged that Daly terminated his employment in retaliation for his refusal to violate the laws of Montana, and he claimed damages for lost income, lost benefits, and emotional and mental distress. Daly tendered the suit to Surety, and Surety refused to defend.

Surety's policy provides Daly coverage for:

> bodily injury or property damage ... caused by an occurrence ... .

The policy defines occurrence as:

> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Daly brought this action to establish that the alleged wrongful termination and accompanying damages fell within coverage for bodily injury and property damage from an occurrence. The District Court held for Surety concluding:

2

While the Court recognizes that insurance policies are to be interpreted most strongly in favor of the insured and any doubts as to coverage are to be resolved in favor of the insured, this does not apply where the terms of the insurance contract are not ambiguous, and the Court must therefore construe the terms according to their plain and ordinary meanings. ... In the case at bar, the terms "bodily injury", "property damage", and "occurrence" are not ambiguous and the Court will not participate in a forced construction of these words in order to extend coverage of the claims made by [the employee] against Plaintiff Daly Ditches.

We affirm on the basis that the claimed injury falls outside the policy's definition of an "occurrence".

Daly presents the following issues for review:

(1)  Did the District Court err in ruling that the tort claim of wrongful discharge asserted against Surety was not covered by the policy?

(2)  Did the District Court err in ruling that it is against public policy for the tort of wrongful discharge to be covered by liability insurance?

(3)  Did the District Court err in ruling Surety had no duty to investigate and defend the claim asserted in the suit filed against its insured?

I.

Daly argues that a breach of the covenant of good faith and fair dealing constitutes an occurrence under the policy. The intentional nature of the firing of Daly's employee should not preclude finding coverage because the consequences

3

of the employment termination were neither expected nor intended, according to Daly.

Surety responds that persuasive authority holds that discharge from employment is not an accident under the policy language at issue here. See Mary & Alice Ford Nursing Home v. Fireman's Insurance (1982), 446 N.Y.S.2d 599. In Mary & Alice Ford Nursing Home, an employer contended that its insured owed a duty to defend a suit brought by an employee who alleged that she was illegally discharged due to disability. The definition of occurrence in the policy at issue here is identical to the policy definition of occurrence in Mary & Alice Ford Nursing Home. In construing the language, the Court stated:

> If, in fact, plaintiff discharged Kathleen Wood from her employment because of her disability, it cannot be said that the mental and emotional injuries alleged by the Woods as flowing directly from plaintiff's intentional discriminatory practice were unexpected and unforeseen by plaintiff, the insured. While "it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damage were intentional" (McGroarty v. Great Amer. Ins. Co., 36 N.Y.2d 358, 364, 368 N.Y.S.2d 485, 329 N.E.2d 172), such is not the case here, for the damages alleged in the Woods' complaint are the intended result which flows directly and immediately from plaintiff's intentional act, rather than arising out of a chain of unintended though foreseeable events that occurred after the intentional act ...

Mary & Alice Ford Nursing Home, 446 N.Y.S.2d at 601, see also, Commercial Union Ins. Co. v. Superior Court (Cal. App. 1987), 242 Cal.Rpter. 454.

The rule in California goes further in restricting the definition of occurrence:

> An intentional termination is not an "occurrence" under the policy because it is not an accident. The definition of "accident" halts any argument that real party [the employer] intended his act but not the resulting harm.

Commercial Union Insurance Co., 242 Cal.Reptr. at 456.

Daly responds that the cited cases cannot be reconciled with this Court's determinations holding that an occurrence resulted where intentional conduct allegedly lead to unintended injuries. Daly argues that emotional and mental injury was not the intended or expected consequence of the discharge.

Montana has employed the reasoning referred to in Mary & Alice Ford Nursing Home to conclude that an intentional act may nevertheless constitute an occurrence where the alleged injuries were not the expected or intended result of the insured's intentional conduct. Lindsay Drilling v. United States Fidelity & Guaranty Co. (1984), 208 Mont. 91, 676 P.2d 203; Millers Mutual Insurance Co. v. Strainer (1983), 204 Mont. 162, 663 P.2d 338; Northwestern Casualty Co. v. Phalen (1979), 182 Mont. 448, 597 P.2d 720.

However, here, as in Mary & Alice Ford Nursing Home, the alleged intentional conduct of Daly could be expected to cause the injury claimed by the employee. The allegation is that Daly fired the employee for refusing to violate Montana law. Damages for emotional and mental suffering may be expected to flow directly as injuries from such a discharge. There is no injury alleged which could not be expected to flow from the termination. Thus, we affirm the decision of the District Court that the intentional conduct exclusion applies.

5

## II.

Daly argues that the District Court erred in holding that public policy favored application of the intentional conduct exclusion. The lower court reasoned that Montana policy weighs against allowing employers to insure against violations of the tort of good faith and fair dealing.

Surety responds that the lower court's analysis of Montana policy provides no grounds for reversal because the decision rested primarily on analysis of the intentional conduct exclusion. We agree with Surety.

Our resolution of issue one affirms the lower court's decision to find no coverage based on the intentional conduct exclusion. This case may be properly resolved on the finding that the exclusion applies. Thus, any issue on the lower court's further reasoning is moot.

## III.

Daly argues that Surety relied exclusively on the complaint to deny coverage, and that Surety's failure to take further action violated its positive duty to investigate claims against its insured. Daly also argues that the duty to investigate under § 33-18-201, MCA, mandated greater action on the part of Surety.

Surety responds that the allegations in the complaint provided sufficient information to refuse coverage. Furthermore, Surety contends, it responded promptly to the demand for coverage, and explained why no coverage existed.

Surety also responds to Daly's argument for application of § 33-18-201, MCA, by contending that an insurer has a duty to investigate only covered claims under the statute, and here the claim obviously fell outside the coverage provided by the policy.

6

Insurers have the duty to investigate "claims and coverage promptly". Tynes v. Bankers Life Co. (Mont. 1986), 730 P.2d 1115, 1124, 43 St.Rep. 2243, 2254. Thus, we do not agree that an insurer has only the duty to investigate covered claims.

However, there is no evidence that Surety failed to properly investigate the claim at issue. Surety inspected the allegations of the complaint and determined that the employee sought damages flowing from intentional conduct on the part of the insured. Ordinarily, where the allegations of a complaint demonstrate that no coverage exists, the insurer has no duty to indemnify or defend. McClear v. St. Paul Insurance Companies (1972), 158 Mont. 452, 456, 493 P.2d 331, 334. Because the complaint demonstrated that no coverage existed, Surety fulfilled its duty to investigate when it read the complaint and informed Daly no defense would be provided. AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy did not participate in this matter.