979 F.2d 855
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The ESTATE OF David SCHWENKE, By and Through its Guardian,
Diana HUDSON, Plaintiff-Appellant,
v.
John C. BECKTOLD, Mabel A. Becktold; Ralph E. Becktold;
Progressive Casualty Insurance Company, Inc.,
Third-Party-Defendants,
v.
STATE FARM FIRE AND CASUALTY COMPANY,
Defendant-Third-Party-Plaintiff-Appellee.
 No. 91-35611.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided Nov. 20, 1992.
 
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David Schwenke was severely disabled in an automobile accident. In this suit, he seeks a declaratory judgment that the negligent driver of the car, John Becktold, was covered by his parents' liability umbrella insurance policy. The district court entered summary judgment for the insurer, State Farm, holding that no material issue of fact existed as to whether Becktold was a resident of his parents' home, and thus he was not covered by his parents' policy. We reverse. The grant of summary judgment under Rule 56(c) is reviewed de novo. Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 677 (9th Cir.1984).
 
 
 3
 The sole issue in the case was whether John Becktold was a resident in his parents' house at the time of the accident. When presented with a motion for summary judgment, the district court is not to weigh the evidence and determine the truth of the matter, but rather simply determines if there is a genuine issue of fact. F.D.I.C. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). In particular, the district court may not evaluate the credibility of a witness. California Steel and Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir.1981). The issue on appeal is whether the evidence before the district court established a genuine issue of fact, requiring a trial to resolve Becktold's residency.
 
 
 4
 I. Meaning of "Resident"
 
 
 5
 The insurance policy does not define "resident." According to Daly Ditches Irrigation Dist. v. National Surety Corp., 764 P.2d 1276, 1277 (Mont.1988), ambiguous terms in insurance contracts are to be construed in favor of coverage, but if the terms are not ambiguous, then they should be interpreted according to their "plain and ordinary meanings." To help elucidate the "plain and ordinary meaning" of "resident," the district court referred to Montana's statutory guidelines for determining residency:
 
 
 6
 Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
 
 
 7
 (1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
 
 
 8
 (2) There can only be a residence.
 
 
 9
 (3) A residence cannot be lost until another is gained ...
 
 
 10
 (6) The residence can be changed only by the union of act and intent.
 
 Mont.Code Ann. § 1-1-215 (1991)
 
 11
 Becktold's life-style, like that of many people his age, was nomadic. He graduated from high school in 1982, and was living with his parents in Billings, Montana at the time. Following graduation he worked for his father and lived with his parents until about 1985, although he was not listed as a dependent on his parents' income tax returns after 1982. After 1985 until the spring of 1989, he stayed with various friends for periods of time and at his parents' house. One of these friends, Scott Banderob, testified that Becktold stayed with friends only for short periods of time, and would keep clothing and property at his parents' house. Becktold had no key nor a room at his parents' house. He paid his own bills, although he was allowed to eat at his parent's house.
 
 
 12
 In the spring of 1989, Becktold landed a job as a ranch hand on the Top Gun Ranch, near Winnett, Montana. He opened a post office box in Winnett and transferred all of his property to the ranch. He visited Billings occasionally, and while there would sometimes see his parents. He also continued to receive some mail at his parents' house. There was no work for him at the ranch in the winter.
 
 
 13
 After the accident, Becktold listed his Winnett address on the Outpatient and Emergency form, although he did list his father as the contact person. Becktold recuperated at both his parents' house and with friends. He listed his parents' house as his address on unemployment forms and for other purposes after the accident.
 
 
 14
 At a deposition taken for the original trial, Becktold identified his parents' house as his residence, and disclaimed having any other permanent residence. It is this testimony, combined with corrorborating testimony, which provides the strongest evidence that Becktold resided with his parents at the relevant time.
 
 
 15
 At the second deposition, taken for the current proceedings, Becktold repudiated his earlier testimony that his parents' house was his permanent residence, and testified that he had primarily been living with friends since 1982, and only occasionally would stay with his parents
 
 
 16
 II. Application of the Standards.
 
 
 17
 Becktold's first deposition and his second are hard to reconcile. We have a line of authority which holds that an issue of fact may not be "genuine" for purposes of summary judgment, where a witness changes his story to create an issue of fact. Radobenko v. Automotated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir.1975). But we have another long line of authority establishing that the district court has no power to make findings of fact resolving a credibility issue and deciding which story was true on summary judgment. F.D.I.C. v. O'Melveny & Myers, 969 F.2d 744, 747 (9th Cir.1992); California Steel and Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir.1981). These are properly reconciled by careful analysis of the facts to see whether the credibility issue, which creates the issue of fact, is genuine.
 
 
 18
 In Radobenko we found that inconsistent later testimony was not enough to save the non-moving party from summary judgment. But Radobenko is distinguishable. In Radobenko the person who changed his story was a party, and he changed his story in a way which would keep his own lawsuit alive. Also, the previous testimony was a deposition, allowing for a full exposition in his own words, while the later story used to resist summary judgment was an affidavit, inherently more capable of being tailored to the motion rather than the witness's perception of the facts.
 
 
 19
 Becktold, unlike Radobenko, is not a party. Becktold's later testimony is the account which supports summary judgment, while in Radobenko the later affidavit suggested the possibility of recent fabrication to avoid summary judgment. Becktold's account which would avoid summary judgment is a deposition, where he had to testify in his own words, while in Radobenko the testimony which would create the issue of fact was an affidavit subsequent to a deposition to the contrary. These distinctions give Becktold's earlier deposition enough weight so that if it establishes a material issue of fact, the issue is "genuine."
 
 
 20
 Although "acts speak louder than words" for purposes of determining residency[1], Becktold's earlier testimony is certainly material. Moreover, Becktold's actions are somewhat ambiguous. It is true that he had no room to call his own at his parent's house during the relevant time, but he testified that he had no permanent room even when he was in high school, and he was clearly a resident then. He did move all his belongings to the ranch, but continued to receive mail at his parent's house. Moreover, if Montana law determines residency, then under Mont.Code Ann. § 1-1-215 (1991), Becktold may have remained a resident of his parent's house because he had not yet established any other; his job at the ranch was only seasonal, so his lodgings there may not qualify as a true residence.
 
 
 21
 Although the factors suggesting that Becktold had abandoned his residence with his parents are weighty, there remains a genuine issue of material fact as to whether he was a resident at the relevant time. Becktold may have been mistaken, confused or lying in one of his depositions, but the district court had no power to decide which one, or make findings of fact resolving the credibility issue and deciding which story was true on summary judgment. California Steel and Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir.1981). That requires trial.
 
 
 22
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Veseth v. Veseth, 410 P.2d 930, 932 (Mont.1966)