NO.   93-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

THE CITY OF BOZEMAN,

       Plaintiff,  Respondent,
and  Cross-Appellant,

  v.

AIU  INSURANCE  COMPANY,

       Defendant  and  Appellant.

FILED

DEC 1 4 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           E. Lee LeVeque and L. D. Nybo, Conklin, Nybo,
           LeVeque & Murphy, Great Falls, Montana

       For Respondent:

           J. Robert Planalp and Steve Reida, Landoe,
           Brown, Planalp & Braaksma, Bozeman, Montana


                Submitted on Briefs:   October  21,  1993

                       Decided:   December  14,  1993

Filed:

_____
       Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff City of Bozeman brought this action in the District Court for the Eighteenth Judicial District in Gallatin County to recover attorney fees and costs incurred because of AIU Insurance Company's refusal to represent the City on appeal in *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767. The District Court concluded that AIU breached its duty to defend the City and entered judgment in favor of the City in the amount of $17,739.53. However, the City's claim for prejudgment interest and attorney fees incurred in the present case was denied. AIU appeals from the District Court's judgment in the City's favor. The City cross-appeals from the District Court's denial of its claim for prejudgment interest and attorney fees. We reverse the judgment of the District Court in favor of the City, and therefore, do not reach the issues in the City's cross-appeal.

The issues on appeal are:

1. Did the District Court err when it concluded that AIU had a contractual obligation to defend the City of Bozeman on appeal in the case of *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767?

2. Did the District Court err when it concluded as a matter of law that aside from its insurance contract, AIU specifically agreed to represent the City of Bozeman on appeal to the Supreme Court unless its investigation dictated otherwise and that no investigation was conducted?

2

## DISCUSSION

In 1985, AIU issued a comprehensive general liability policy to the City of Bozeman which was in effect for the period from June 30, 1985, to June 30, 1986. Pursuant to the terms of that policy, the company agreed to pay on behalf of its insured:

> All sums which the insured shall become legally obligated to pay as damages because of
>
>    A.    bodily injury or
>
>    B.    property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

In other words, the policy generally covered the City against claims for bodily injury or property damage if they resulted from an occurrence. The following definitions in the policy narrowed the scope of its coverage:

> "Bodily injury" means bodily injury, sickness, or a disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom:
>
> "Property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at anytime resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

3

**"Occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured . . . .

Specifically excluded from coverage under the policy was any liability assumed by the insured under any contract.

In addition to the general coverage set forth above, AIU's policy of insurance with the City included a broad form comprehensive liability endorsement in which it agreed to indemnify the insured from any damages it became obligated to pay by "publication or utterance of a libel or slander or of other defamatory or disparaging material . . . ."

In December 1986, the City was sued for damages by Mark Story based on conduct that allegedly occurred during the policy period. Story filed an amended complaint in January 1987 in which he included claims for breach of contract, breach of the implied covenant of good faith and fair dealing, constructive fraud, and defamation. Story sought contract damages, unspecified compensatory damages, and punitive damages.

The City tendered its defense in the lawsuit to AIU. In response, on January 12, 1987, AIU agreed to defend the City while reserving its right to rely on all of the policy's provisions before determining whether to extend coverage or continue representation in the future. The City was specifically advised that "[w]e do not intend to waive any provisions of the policy, and strictly reserve our rights to later decline coverage and withdraw Mr. Herndon from the defense of this action."

4

On January 27, 1987, AIU wrote to the City again and pointed out that pursuant to the endorsement, Story's claim for damages based on defamation was covered under the policy, but that his other claims were not covered, based on the policy's definition of "occurrence" which precluded coverage for intentional conduct. That letter repeated AIU's "reservation of rights," as did subsequent letters dated March 23, 1987, and November 12, 1987.

In its letter dated November 12, AIU stated:

> If at such time our position would be altered as a result of our investigation or a determination is made by the Supreme Court of Montana of such issues, we will immediately notify you, as the insured, with regard to our position.

Story's complaint was generally based on his allegations that he had contracted with the City to construct water main improvements in August 1985; that subsequent to entering into the contract the City tried to alter the terms of the contract to Story's detriment: that the City breached the terms of the contract: and that its engineer misrepresented Story's performance to his bonding company, which caused him to lose his bonding. He alleged that because of the City's breach he was still owed $230,747.17 under the terms of his contract, and that because of the City's bad faith, he sustained unspecified general damages. Story alleged damage to his business, but alleged no property damage nor personal injury as they were defined in the AIU policy.

Story's claim against the City went to trial, and the jury returned its verdict on March 23, 1988. The jury found that the City did breach its obligation of good faith and fair dealing

5

**related** to its contract with Story, but that its engineer's letter to Story's bonding company was not defamatory. The issue of fraud was not submitted to the jury. However, the jury did find that the City breached its contract.

The jury awarded compensatory damages in the amount of $360,000 as compensation for the City's breach of the covenant of good faith and fair dealing. It awarded contractual damages in the amount of $13,236 based on the City's breach of contract. It was specifically advised not to award damages for defamation if there was no finding of defamation.

Judgment was entered for Story on March 24, 1988, and the City advised AIU that it wanted to appeal from the judgment. However, AIU declined to further represent the City on appeal.

Neither Story nor the City appealed from that part of the jury verdict finding that no defamation had occurred.

On appeal, this Court reversed the judgment of the District Court based upon error in the verdict form and the law of bad faith which had been applied, and remanded to the District Court for retrial. On remand, Story again alleged defamation in spite of the fact that he had not appealed from the jury's previous finding, and AIU again assumed the City's defense. Story's claim was ultimately retried and appealed to this Court for a second time, as a result of which the jury's second verdict was affirmed. *Story v. City of Bozeman* (Mont. 1993), 856 P.2d 202, 50 St. Rep. 761.

On June 25, 1990, the City filed this complaint against AIU in which it alleged that pursuant to the terms of its contract of

insurance, AIU had an obligation to represent it during the first appeal, and because AIU had breached that obligation, it incurred $17,499.53 in costs and fees to prosecute the appeal. The City also alleged that it had been led to believe by AIU that the company would provide a defense to the conclusion of the litigation and that the company was, therefore, estopped to terminate its defense before the litigation had been concluded.

Both parties conceded that the facts were not in dispute and moved for summary judgment. In support of its motion, the City primarily relied on the terms of its contract, the correspondence which was previously discussed, and the history of Story's claim against the City, which is well documented in our previous decisions.

On January 7, 1992, the District Court entered its order granting the City's motion for summary judgment and denying AIU's motion. As the basis for its decision, the District Court concluded that since Story was free to reallege defamation after remand following the City's first appeal, that the City always risked liability for defamation, and therefore, that its insurer had a continuing obligation to defend it on appeal. As a second basis for its decision, the District Court concluded that the company had specifically agreed to continue its representation of the City until there was a determination by the Supreme Court, or until its investigation indicated otherwise. The District Court concluded that since no investigation had been conducted, AIU's obligation continued pursuant to its agreement.

7

However, the District Court denied the City's claim for attorney fees and costs incurred in bringing this action on the basis that there was no statutory right to fees, nor any contractual obligation to pay them.

I.

Did the District Court err when it concluded that AIU had a contractual obligation to defend the City of Bozeman on appeal in the case of *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767?

It is AIU's position that following the first verdict for Story, and during the appeal from that verdict, there were no claims being asserted against the City which were covered under its policy with AIU, and therefore, there was no longer a duty to defend. Although Story did reassert the defamation claim after remand following the first appeal to this Court, neither AIU nor the City considered that a legal possibility, as is illustrated by the City's argument during the second appeal. Furthermore, AIU points out that as soon as the claim for defamation was reasserted against the City, it reassumed responsibility for the defense.

AIU cites *Burns v. Underwriters Adjusting Company* (1988), 234 Mont. 508, 765 P.2d 712, and *Daly Ditches Irrigation District v. National Surety* (1988), 234 Mont. 537, 764 P.2d 1276, and the Federal District Court's decision in *Aetna Casualty and Surety Company v. First Security Bank of Bozeman* (D. Mont. 1987), 662 F. Supp. 1126, for the principles that under the terms of this policy there was no coverage for the claims asserted by

a

story, other than his claim for defamation, and that where there is no coverage, there is no duty to defend.

The City argues that an insurer's obligation to defend a suit does not end with a successful verdict in the trial court, but includes **representation** on any appeal that results from the trial court's verdict. The City contends that since we held in our second *Story* decision that Story could reassert his claim for defamation after remand from the first appeal, that the defamation claim had not been finally resolved, and therefore, that AIU had a continuous duty to represent the City on appeal from the first verdict.

In support of its argument that AIU had a continuing duty to represent it on appeal, the City cites our decision in *St. Paul Fire & Marine Insurance Company v. Thompson* (1967), 150 Mont. 182, 433 P.2d 795, and numerous decisions from other jurisdictions.

We conclude that the facts in *Thompson* are not sufficiently on point to establish precedent for our decision in this case, and that for similar reasons, the authorities from other jurisdictions relied on by the City are unpersuasive.

In *Thompson,* the insured had been sued for conduct which was definitely covered under the policy. However, his insurer, after expending the limits of coverage provided for in the policy, decided that it would no longer represent its insured. We concluded that under those circumstances, the insurer's duty to defend is in addition to its duty to indemnify and was not

9

satisfied by the insurer's payment of policy limits. Similarly, most of the authorities provided by the City from other jurisdictions relate to an insurer's duty to represent its insured on appeal where the issues on appeal relate to a claim which is covered under the policy.

In this case, to determine AIU's obligation on appeal, we must look to the terms of the policy. However, the policy only created a duty to defend any suit which sought damages on account of bodily injury or property damage caused by an occurrence, as defined in the policy. In *Daly Ditches,* we held that where an insured's former employee sued for breach of the covenant of good faith and fair dealing and that where the insured's policy provided for coverage under terms identical to those in this case, the insured's termination of its employee was not an "occurrence" under the terms of the policy, and therefore, the claim was not covered. Based on lack of coverage for the claim, we concluded in that case that the insurer had no duty to defend its insured. *Daly Ditches,* 765 P.2d at 1279. Likewise, in *Burns,* 764 P.2d at 713, we held that where there is no duty to indemnify the insured there is no duty to defend.

Under similar circumstances, the Federal District Court for the District of Montana has concluded that, based on Montana precedent, there is no duty for an insurer to defend its insured. In *First Security Bank of Bozeman* , a former employee sued First Security Bank for wrongful termination of her employment. She sought damages for lost wages, diminished earning capacity, harm to her

reputation, and emotional distress. She also sought punitive damages. Aetna insured the bank under a comprehensive liability policy, but filed a declaratory judgment action to establish that it had no duty to defend on the grounds that the damages and injuries sought by the employee did not fall within the policy definitions of "bodily injury," "property damage," or "occurrence." After reviewing our prior authorities, the district court agreed. In arriving at its conclusion, the district court stated:

> Ordinarily, a liability insurer has no duty to defend an action against its insured when the claim or complaint clearly falls outside the scope of the policy's coverage. [*McAlear v. Saint Paul Insurance Company* (1972), 158 Mont. 452, 456, 493 P.2d 331, 334]. Where the claim against the insured sets forth facts representing a risk covered by the terms of the policy, the insurer's duty to defend arises. ***Lindsay Drilling and Contracting v. United States Fidelity and Guaranty Company***, [208] Mont. [91, 94], 676 P.2d 203, 205 (1984).

*First Security Bank of Bozeman*, 662 F. Supp. at 1128.

The district court in that case also concluded that the type of damages claimed by the employee (similar to those damages claimed by Story) did not result from bodily injury or property damage, as defined in the policy.

Likewise, in this case we conclude that AIU's duty to defend the City depended on a claim being asserted against the City seeking damages on account of conduct covered by the terms of its comprehensive general liability policy or the broad form comprehensive endorsement to that policy. During the first trial, such a claim existed based on Story's allegation that he was defamed by the City's engineer. However, when that claim was

11

resolved favorably to the City, and when neither Story nor the City appealed the jury's determination that he had not been defamed, there were no issues on appeal relating to claims covered by the terms of **AIU's** policy with the City. Therefore, we conclude that AIU did not have a contractual obligation under the terms of its insurance policy with the City to represent the City on appeal, and we reverse the District Court's conclusion that it did.

## II.

Did the District Court err when it concluded as a matter of law that aside from its insurance contract, AIU specifically agreed to represent the City of Bozeman on appeal to the Supreme Court unless its investigation dictated otherwise and that no investigation was conducted?

On November 12, 1987, AIU wrote to the City Attorney for the City of Bozeman and reaffirmed its reservation of rights. In that letter it stated:

> If at such time our position would be altered as a result of our investigation or a determination is made by the Supreme Court of Montana of such issues, we will immediately notify you, as the insured, with regard to our position.

Based on that statement, the District Court found that:

> Further, AIU, through its representative, Steve Armstrong, represented to the City of Bozeman, through its representative Bruce Becker, on November 12, 1987, that defense of the matter would continue until "such time our position would be altered as a result of our investigation or a determination is made by the Supreme Court of Montana on such issues." No investigation was conducted by AIU.

12

Based on that finding, the District Court concluded: '*Further, AIU specifically agreed to proceed through the determination of the Supreme Court, absent an investigation. No such investigation was conducted."

On appeal, AIU contends there was no evidence before the District Court from which it could find that no investigation was conducted by the company before it terminated its representation of the City. Therefore, AIU contends that the District Court could not find, as a matter of law, that it had breached its agreement to defend on that basis.

The City takes the position that since AIU presented no evidence that it had conducted an investigation, the District Court was correct to grant the City's motion for summary judgment on that basis.

The problem with the City's argument is that it ignores the rules of procedure. When a party moves for summary judgment, it has the burden of establishing that there is no issue of fact. It cannot rely on its contentions in its pleadings, or the arguments of its counsel.

In this case, there was no evidence from which the District Court could conclude that AIU conducted no investigation prior to the termination of its representation of the City. Further, reason compels the opposite conclusion.

Prior to the time that it declined to represent the City on appeal, the attorney retained and paid by AIU had prepared for trial, participated in trial, successfully defended against Story's

13

claim for defamation, and received the jury's verdict.  Even if we were to assume (and we have no reason in the record to do so) that no investigation was conducted by AIU prior to trial, we certainly must conclude that by the time the trial was completed, AIU and the attorney that it retained were completely familiar with all of the factual bases for Story's claim.  No further investigation could be required to comply with the representation made in AIU's November 12, 1987, letter.  Therefore, we conclude that the District Court erred when it held that AIU breached the agreement to investigate before withdrawing its defense of the City of Bozeman.

We reverse the judgment of the District Court and remand this to the District Court with instructions to enter judgment in favor of defendant.  Based on this decision, it is not necessary to consider those issues raised in the City's cross-appeal.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14