**SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,**

**v.**

**Lawrence G. TUNKLE and Cynthia H. Shott, as Conservator for the Estate of Gary A. Larson, Defendants.**

**No. CV 97–92–M–DWM.**

United States District Court, D. Montana, Missoula Division.

March 20, 1998.

Shelton C. Williams, Mark S. Williams, Williams & Ranney, PC, Missoula, MT, for Safeco Insurance Company of America, plaintiffs.

Paul C. Meismer, Carey, Meismer & McKeon, PLLP, Missoula, MT, Lon J. Dale,

Milodragovich, Dale, Steinbrenner & Binney, PC, Missoula, MT, Cynthia K. Smith, Cederberg, Shott & Smith, Missoula, MT, for Lawrence G. Tunkle, Cynthia H. Shott, As Conservator for the Estate of Gary A. Larson, defendants.

## ORDER & OPINION

MOLLOY, District Judge.

### I. Introduction

In this declaratory judgment action, Safeco seeks a determination that it is not obligated to defend or to indemnify Lawrence Tunkle in a lawsuit brought against him by Gary Larson. The Motion for Summary Judgment (# 17) was filed on December 24, 1997. I heard oral argument on February 25, 1998. I find Safeco is obligated to defend Tunkle and to indemnify him if the state jury finds he acted in self-defense.

### II. Facts

The material facts are not in dispute. Gary Larson entered Lawrence Tunkle's home. Tunkle shot Larson several times. Tunkle was prosecuted for shooting Larson. He was acquitted by a jury that found he acted in self-defense.

Larson then sued Tunkle in state court for damages suffered in the shooting. Tunkle now wants Safeco to defend him and to indemnify him against any damages a jury awards to Larson. Safeco takes the position that the homeowners insurance policy it issued to Tunkle provides no coverage for the shooting. Safeco argues the policy language excludes its duty to defend and its duty to indemnify because the shooting was an intentional act.

### III. Discussion

#### A. The language defining "occurrence"

The policy terms at issue are (1) the definition of occurrence and (2) the intentional act exclusion. The homeowners policy covers "occurrences" resulting in bodily injury. An "occurrence" is "an accident ... which results in bodily injury." The intentional act exclusion precludes personal liability for bodily injury "which is expected or intended by any 'insured' or which is the foreseeable result of an act or omission intended by any 'insured.'"

Safeco claims there is no coverage here because the shooting is not an "occurrence" as defined in the policy. In Safeco's view, the shooting is not an occurrence because it was not an "accident." The gun did not discharge "accidentally": Instead, Tunkle deliberately pointed the gun at Larson and fired it.

▆ To accept Safeco's reading of the policy requires imputing a definition of accident into the policy that is not there. Safeco says the word "accident" as used in the policy excludes any deliberate act. However, the policy does not define "accident." Webster's Third New International Dictionary does define accident. An accident is, *inter alia*, a "lack of intention or necessity, often opposed to design"; "an unforseen unplanned event"; [a] "sudden event or change occurring without intent or volition ... and producing an unfortunate result."

The Safeco definition of "occurrence" is ambiguous.[1] The policy definition of "occurrence" is a tautology: An occurrence is an accident and an accident is an occurrence. Yet accident is not defined in the policy. Ambiguities in an insurance contract are construed against the insurer. *Leibrand v. National Farmers Union Property & Cas. Co.*, 272 Mont. 1, 898 P.2d 1220 (1995). The shooting in this case was an "accident" as that term is reflected in the generally understood dictionary definitions noted above.

---

1. The Safeco policy is unlike any of the policies in the cases discussed. The cases cited discuss policies where occurrence is defined as "an accident resulting in injury that was neither expected nor intended from the standpoint of the insured." *See, e.g., New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 798 P.2d 130, 131 (1990).

Safeco chose to define "occurrence" as "accident" and to insert the "neither-expected-nor—intended" language as a separate exclusion. In so doing, Safeco made its policy definition of "occurrence" ambiguous.

This being so, the shooting here was an "occurrence" under the policy.

## B. Intentional act exclusion

Safeco believes there is no coverage, relying on the "intentional act" exclusion in the policy to support its position. In Safeco's view, even if Tunkle's actions were motivated by self-defense, that does not alter their intentional character. Safeco declares, under Montana law, all intentional acts are excluded from liability insurance coverage.

Tunkle understandably sees things differently. He argues that Montana recognizes a duty to indemnify even when a harmful act is intentional if the resulting injury was neither expected nor intended by the insured. According to Tunkle's view, Montana law makes a legal distinction between intended acts and non-intended consequences. Larson too argues that acts of self-defense are not excluded by the intentional act exclusion clause because the purpose of the exclusion is to deny protection for illegal, wanton and malicious acts. Larson posits that no illegal harm is intended when a person acts in self-defense.

## C. The case law on intentional acts

Tunkle relies principally on *Millers Mutual Insurance Company v. Strainer*, 204 Mont. 162, 663 P.2d 338 (1983). In that case, a practical joke on the worksite went wrong. Alfred Elwell was tricked into inhaling smoke after the filter in his respirator had been removed by Anthony Strainer, the practical joker. Strainer thought Elwell would suffer a fit of coughing, but, unbeknownst to Strainer, the smoke was so laced with harmful components they caused Elwell serious injury. *Id.* at 339.

Elwell sued both Strainer and their mutual employer, ASARCO. Millers Mutual Insurance Company ("Millers") then brought a declaratory judgment action trying to escape its duty to defend or to indemnify. The district court found Millers had no liability either for coverage or for the defense of Strainer. Its ruling relied on the "intentional act" exclusion of the policy. *Id.*

In *Millers Mutual*, the policy excluded from coverage injury " 'either expected or intended from the standpoint of the insured.' " *Id.* at 340. Looking to the earlier case of *Northwestern National Casualty v. Phalen*, 182 Mont. 448, 597 P.2d 720, the Supreme Court noted:

> *Phalen* clearly established that intentional acts are not excluded under an insurance policy unless the intentional act results in injuries which would be expected or intended. A person may act intentionally without intending or expecting the consequences of that act.

*Strainer*, 663 P.2d at 341.

Safeco argues that the *Phalen* rationale was effectively overruled by *New Hampshire Insurance Group v. Strecker*, 244 Mont. 478, 798 P.2d 130 (1990) and later cases. In *Strecker*, the insurance company claimed it owed no duty to defend or to indemnify a father sued by his daughter for sexual molestation. The *Strecker* policy defined "occurrence" as "an accident . . . result[ing] in bodily injury . . . neither expected nor intended from the standpoint of the insured." *Id.* at 131.

The Montana court noted the definition of "occurrence raises the issue of whether [Strecker's] sexual molestation of K.S. was intentional, rather than accidental, thus precluding coverage under [the] insurance policy . . . ." *Id.* The court examined the record and found "there is no evidence to show that [Strecker] did not intend to sexually molest his daughter for ten years. (sic) (double negative). Such actions are not accidental." *Id.*

The *Strecker* court held that coverage under the policy is excluded if either of a two prong test is satisfied, namely, (1) "if the injury was *not* caused by an accident," or (2) "if the injury was either expected or intended from the standpoint of the insured." 798 P.2d at 132. There was no coverage in *Strecker* because the sexual molestation was not accidental. Discussing the second prong, the court said that there was no coverage "for harm resulting from sexual molestation," because the policy was "clearly intended to deny coverage for intentional misconduct."

Montana Supreme Court cases following *Strecker* adopt the two-prong test set forth above. In *American States Insurance Company v. Willoughby*, 254 Mont. 218, 836 P.2d 37 (1992), the court considered whether the intentional act exclusion applied when Mark Neilson bit, kicked and hit two security guards who were attempting to subdue him. The security guards sued for damages. Neilson's insurance company brought a declaratory action to avoid coverage on the grounds that Neilson's actions were excluded under the "intentional acts" exclusion. *Id.* at 39.

The court applied *Strecker's* two-prong test. It noted Neilson's behavior was "per se intentional and the intent to seriously injure is evident from the commission and type or nature of the act itself." *Id.* at 40. The court then noted that "[i]f we apply the *Strecker* test to our conclusion that Neilson's acts were intentional *and* evince an intent to injure by their very nature, both prongs of the test are satisfied." *Id.* at 41; *see also Farmers Union Mut. Ins. v. Kienenberger*, 257 Mont. 107, 847 P.2d 1360 (1993) (no coverage because sexual assault was intentional and "insurance contract clearly and unambiguously excludes coverage for intentional torts").

The latest in this line of cases is *Smith v. State Farm Insurance Companies*, 264 Mont. 129, 870 P.2d 74 (Mont.1994). David Smith was arguing with his daughter's baby-sitter. He punched her in the face, knocking her tooth out. Smith defended himself by declaring Kinsey hit him first with an unknown object. The blow supposedly rendered him momentarily unconscious. He then argued there was insurance coverage because he struck the sitter in a reflex action when unconsciousness. *Id.* at 74. Of course the baby-sitter sued Smith. Smith settled the case when coverage was declined. He then brought a bad-faith suit against State Farm. State Farm prevailed on summary judgment because Smith's intentional conduct was excluded by the policy.

On appeal, Smith claimed his act was not intentional because he was unconscious and the act was an accidental reflex. *Id.* at 75. The court disagreed. Smith pleaded guilty to criminal assault and admitted, "'I know that I hit her and it was wrong.'" *Id.* The Supreme Court found that "[s]triking another person in the face is an intentional act because of the certainty of causing harm . . . . " *Id.* at 75. Applying the two-pronged *Strecker* test, the Supreme Court held both prongs were satisfied by the nature of the conduct. Smith's conduct "evince[d] an intent to injure, regardless of his protests to the contrary." *Id.* at 76. The court rejected the unconscious reflexive strike theory as being accidental. *Id.*

### D. Articulated public policy makes the cases fit

These two lines of cases [2] can be reconciled when viewed in light of the stated public policy rationale for denying insurance coverage to intentional acts. The Montana Supreme Court declared actions such as biting, kicking, and hitting "cannot be the basis for policy coverage without vitiating the purpose of insurance." *Willoughby*, 836 P.2d at 40. Insureds cannot be "allowed through inten-

---

**2.** The Montana Supreme Court acknowledges the two divergent strands in its insurance law jurisprudence. *See Daly Ditches Irrigation Dist. v. National Sur. Corp.*, 234 Mont. 537, 764 P.2d 1276 (1988). Daly was sued by an employee who claimed he had been fired in retaliation for his refusal to violate the public policy of Montana. Daly tendered the suit to Surety, and Surety refused to defend on the basis of the intentional act exclusion. 764 P.2d at 1277. The district court found for Surety, and Daly appealed.

Daly argued that even though it intentionally fired the employee, the consequences of the firing (the employee suit) were not expected or intended. The court acknowledged the line of cases holding that "an intentional act may never-

theless constitute an occurrence where the alleged injuries were not the expected or intended result of the insured's intentional conduct." *Id.* at 1278 (citing cases, *inter alia, Strainer* and *Phalen*). However, that reasoning did not apply because Daly's intentional conduct "could be expected to cause the injury claimed by the employee." *Id.*

Even in the post-*Strecker* cases, the court acknowledges that intent has a mental component relating to the harm inflicted. Although the court found in *Strecker* that sexual molestation was not accidental, 798 P.2d at 130, it also noted that the perpetrator "was not suffering from any mental disability," and that "[e]vidence of diminished capacity might preclude the insured from forming the requisite intent to harm." *Id.*

tional or reckless acts to *consciously* control risks covered by policy, [or] *the central concept of insurance is violated."* *Id.* Similarly, the *Smith* court declared, "Public policy forbids indemnifying willful wrongdoing and there is no insurance coverage for striking someone in the face." 264 Mont. at 133, 870 P.2d at 76.

■ However, self-defense is the very opposite of willful wrongdoing. Self-defense is volitional but not intentional within the policy exclusions. Willful wrongdoing vitiates the legal and factual concept of self-defense. By definition, the intent of a person acting in self-defense is to protect himself. Self-defense requires an admission of acting in a certain way. But, the conduct admitted is not a violation of the law. It is seeking a factual determination that certain conduct is legally justified. The primary intent is not to cause harm to another. A person acting only with the intent to harm another cannot claim self-defense.

### IV. Conclusion

*Phalen* and its progeny state the public policy in Montana about the exclusion of intentional conduct from insurance coverage. Illegal or criminal acts cannot be insured. Volitional legal acts are insurable if they fall within the language of the policy. Because there is an ambiguity in the occurrence and accident definition of this policy, Safeco cannot exclude a volitional legal act falling within the occurrence definition. Safeco's homeowner's policy provides coverage where an insured causes bodily injury to another while legally acting in self-defense. Consequently, the "intentional act" exclusion in the Safeco policy does not apply in this case. The duty to defend arises where an insured has a colorable claim of self-defense.

On the other hand, duty to indemnify is contingent on whether Tunkle acted in self-defense. That is a fact question for the State court to resolve during the course of the underlying litigation. Under the principles of comity, I make no determination about the legal effect of Tunkle's acquittal of the state criminal charges. That is a matter best left to the state judge presiding in the underlying state case.

Accordingly, IT IS ORDERED and DECLARED:

(1) Safeco's Motion for Summary Judgment is **DENIED.**

(2) Safeco has a duty to defend the insured under the terms of the policy at issue.

(3) Safeco has a duty to indemnify if a jury finds Tunkle acted in self-defense.

(4) The case is remanded to State Court for consolidation with the underlying litigation and resolution of the self-defense indemnification issue by a jury in a manner consistent with this opinion.

(5) The clerk if directed to enter final judgment in favor of defendants and against Safeco on the Declaratory Judgment Action and to remand the resolution of the factual dispute to the state trial court. Each party shall bear its own costs and attorney fees.